UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALBERT LEE MITCHELL,<br><br>Defendant. | No. 2:12-cr-0401-KJM<br><br><br>ORDER |

        Defendant Albert Mitchell is charged with knowingly receiving child pornography in violation of 18 U.S.C. § 2252(a)(2). He seeks an order compelling the government to provide him with a mirror copy of the computer media seized from him. (ECF No. 90.) He agrees to a protective order under which all materials will be accessible to defense attorneys, paralegals, and experts only, on a confidential basis. The government refuses to produce the materials, arguing it is prohibited from doing under 18 U.S.C. § 3509(m), a provision of the Adam Walsh Act.[1] After an evidentiary hearing, the duty magistrate judge granted defendant's motion, but stayed the order, pending the government's appeal to this court. (ECF No. 85.)

---

[1] The Adam Walsh Child and Protection Safety Act of 2006, Pub. L. 109-248, §§ 1–707, (H.R. 4472), 120 Stat. 587, contains numerous provisions aimed at protecting children from sexual exploitation, violent crime, child abuse, and child pornography.

1

The matter is now before this court on the government's request for reconsideration of the magistrate judge's order. (ECF No. 90.) The court held a hearing on the matter on June 17, 2015, at which Josh Sigal appeared for the government; Michael Garvin appeared on behalf of an alleged victim; and Michael Chastaine appeared for defendant. (ECF No. 101.) The magistrate judge's "core legal error," the government asserts, "was to decide based on the subjective limitations of a particular defense expert . . . [,] rather than apply "the statutory objective standard . . ." in determining whether "the examination conditions at the [government] facility made the child pornography 'reasonably available'" (ECF No. 90 at 1, 6).

As explained below, the court GRANTS reconsideration, REVERSES the magistrate judge's decision and DENIES the defense motion.

I. BACKGROUND

On November 5, 2012, the government filed a criminal complaint charging defendant with knowingly receiving child pornography in violation of 18 U.S.C. § 2252(a)(2). (ECF No. 1 at 19.) The government also sought an arrest warrant for defendant, based on the fruits of a search of defendant's residence conducted earlier in the day. (ECF Nos. 1, 2.) During the search, the government found "multiple computers and other items of computer equipment, including several loose hard drives." (ECF No. 1 ¶ 22.) A forensic examination of the equipment by the government produced files "consistent with child pornography." (*Id.*) An arrest warrant issued, and defendant was arrested. (ECF No. 2.)

At his initial appearance, defendant was released on an unsecured bond. (ECF Nos. 5, 8.) On November 15, 2012, the government filed an indictment, charging defendant with receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2). (ECF No. 11.) Defendant was arraigned on November 19, 2012, and entered a not-guilty plea. (ECF No. 14.)

On February 6, 2013, the court issued a protective order allowing defense counsel access to the computer storage media. (ECF No. 21.) That order provided the government would allow the defense to examine the media in a private room at a government facility; the government agents would not be inside the room during examination; and the defense expert could bring any equipment or materials necessary to conduct the examination. (*Id.*) The order

granted those terms of access specifically to defense counsel at the time, Matthew Scoble, defense paralegal Julie Denny, and defendant's proposed expert, Marcus Lawson. (*Id.*) As provided by that order, Mr. Lawson viewed the evidence seventeen times at the Homeland Security Investigations (HSI) office, the government facility, in Sacramento. (ECF No. 89 at 62:14–23, 65:15–24.)

On December 10, 2013, the parties submitted a joint stipulation seeking an additional protective order allowing defendant's new expert, Tami Loehrs, access to the hard drive and media on the same terms as the first protective order. (ECF No. 40.) The court granted the order on December 11, 2013. (ECF No. 41.) Ms. Loehrs visited the HSI office once over two days, with one other person, on March 19 and 20, 2014. (Loehrs Decl. ¶ 7, ECF No. 62; ECF No. 89 at 65:23–24.)

On September 10, 2014, defendant moved for a court order compelling the government to provide Ms. Loehrs a mirror copy of the seized computer media. (ECF No. 56.) The government opposed the motion (ECF No. 61), and defendant replied (ECF No. 63). The alleged victim filed an assertion of rights in support of the government's motion. (ECF No. 93.) On November 4, 2014, the magistrate judge issued an order setting an evidentiary hearing on defendant's motion to compel. (ECF No. 74.)

Prior to the evidentiary hearing, Ms. Loehrs submitted a declaration stating she had been required to conduct her examination with "no privacy, no controlled environment . . . and [with] no more than a single inadequate computer without other resources available." (Loehrs Decl. ¶ 13, ECF No. 62.) Ms. Loehrs' declaration indicated that the inadequacies present in this case were common across all the examinations of child pornography on seized computer media she had reviewed. She stated, "I am rarely provided a computer at an off-site facility that meets the specifications of the forensic computers in my lab." (*Id.* ¶ 18.) Ms. Loehrs also declared that at the Sacramento HSI office, the room provided was small and lacked privacy due to a large window because she "could be viewed by anyone on the other side of the window." (*Id.* ¶ 23.) She stated it generally has been her experience that off-site government locations were "uncontrolled" environments where staff walk in and out of an exam room at will, equipment

could be damaged or tampered with, and access to the evidence was limited by the supervising agent's personal schedule and the facility's days and hours. (*Id.* ¶¶ 25–28.) Ms. Loehrs also submitted a supplemental declaration, which contained further detailed information about what she did at the off-site facility in this case, and explained the range of forensic tools, software, and processes she may require for a forensic examination, including in this case. (*See generally* Loehrs Suppl. Decl., ECF No. 67.)

The magistrate judge held the evidentiary hearing on May 11, 2015. (ECF No. 85.) During hearing, Ms. Loehrs testified without contradiction that in this case "the number of files in allocated space . . . the things that have not been deleted," is over a million; "the data in unallocated space which is also very important to our case . . . could be two to three times that size." (ECF No. 89 at 14:11-18; *see also id.* at 51:21-22 ("this is a hard drive that was in the terabyte [range]").) She said she visited the government facility in Sacramento one time, over two days, bringing with her one "mobile laptop computer – forensic computer," and "connected the evidence to it, using my forensic software tried to run some processes and do an initial preliminary examination." (*Id.* at 6:23-7:2, 21:20-22:7.) She "exported out some non-contraband data," which she took back to her own lab to analyze; but "many of the processes wouldn't run so I kind of stopped it there." (*Id.* at 7:2-5; *see also id.* at 40:22-24 ("in this case, I couldn't run the – I physically couldn't run the processes. . . . that was the issue in this case."), 44:2.) Ms. Loehrs estimated that a single laptop generally has about "a quarter" of the power of a full forensic lab machine." (*Id.* at 10:18-22.) She responded affirmatively to a question asking if she has "gone as far as you think you can go based on doing an on-site evaluation?" (*Id.* at 20:1-4.) She said she had obtained "some" information, "[b]ut not enough to draw any conclusions," and not enough to answer counsel's questions or provide the analyses the defense requires. (*Id.* at 20:5-14.)

During direct and cross-examination, Ms. Loehrs acknowledged that several of the statements included in her first declaration were incorrect because she conducts many exams at off-site locations and she had confused her site visit in this case with a separate visit to San Francisco for a different case. (*Id.* at 7:9-16.) Specifically, in this case, Loehrs corrected the record to say she used her own "mobile lab" – that is, the one laptop she brought – not the

4

government's computer, to conduct her exam. Additionally, there was no window in the exam room. She said these discrepancies did not "change anything." (*See id.* at 7:16–20.) During cross-exam, Loehrs again acknowledged the discrepancies in her first declaration, saying, "I confuse one facility with another." (*See id.* at 31–34.) While testifying that internet access was important, she could not remember if she had been able to use the internet in this case: "Honestly I don't have an independent recollection of the exam I did last year, but I could probably find out." (*Id.* at 26:16-25; *see also id.* at 39:19-40:1 (not recalling whether cell phone allowed at site in this case).) When asked what she needed for testing, and whether that included special types of software, she answered generally, "It depends on the case. Every case is different." (*Id.* at 34:16-18.) When asked what happens when she does not receive a mirror image copy, she again said, "Well it depends on the case. Sometimes we don't need it." (*Id.* at 37:4-7.) Regarding specific types of accessibility problems encountered at government sites delineated in her declaration, Ms. Loehrs clarified that "none of those reasons apply to this case." *Id.* at 40:2-7 (referencing ¶ 27 of her first declaration).

Ms. Loehrs opined generally "that essentially the law's not keeping up with the technology at this point." (*Id.* at 50:19–22.) She said her lab in Arizona not only provides the tools she needs but is extremely secure in terms of child pornography victims' privacy concerns. (*Id.* at 18:7–19:25.) She also said her personal professional commitments would preclude her from conducting the type of exam she sees as necessary at any off-site location, regardless of the sufficiency of a site's conditions. (*Id.* at 28:12–29:13[3]). Conducting the required analyses would

---

[3] In relevant parts the transcript reads:

> Loehrs: No. I would say that I absolutely could not [bring lab equipment to the off-site facility] because I'm not going to limit my other cases and limit my lab to do one case off-site and potentially leave equipment at an HSI facility for weeks or months and then tell all these other clients well we can't do your work because I had to, you know, empty all the stuff out of my lab. I'd say no.
>
> Government: [I]f the defendant and the government agreed on a protective order that gave you access to whatever equipment you would need and you could bring, in theory you could bring all of that stuff here?

5

mean she would be at an off-site facility "for months." (*Id.* at 52:6-14.) Additionally, Ms. Loehrs noted that of the roughly 600 child pornography cases on which she has worked, hundreds were federal cases. (*Id.* at 36:7–25.) A federal district court has granted her request for a mirror image copy of a defendant's hard drive only once. (*Id.*)

The magistrate judge also heard testimony from two government witnesses, Kurt Blackwelder and Michael Barge, both computer forensic agents for HSI in Sacramento. (*Id.* at 55–81, 82–91.) Mr. Blackwelder's testimony covered the arrangements for examinations conducted at the Sacramento HSI facility. He testified that examiners are given privacy and a sign is posted outside the examination room that ensures they will not be interrupted. (*Id.* at 59:1–21.) Mr. Blackwelder also testified that he makes it clear to examiners he will modify his work schedule to meet the examiner's needs and come in earlier, later, or on weekends, if need be. (*Id.* at 60:11–17.) He stated that he secures any equipment left in the exam room overnight. (*Id.* at 60:18–25.) Examiners also have internet and cell phone access. (*Id.* at 63:24–64:9.) Finally, Mr. Blackwelder testified that neither Mr. Lawson nor Ms. Loehrs ever raised any concerns about the scope of their access to the computer media in this case, or the access arrangements. (*Id.* at 67:18–24, 70:5–13, 71:25-73:2.) Mr. Barge testified that defendant Mitchell reviewed the evidence personally with his defense team on two occasions. (*Id.* at 85:21–88:19.)

In closing arguments, the defense argued that the government's Sacramento off-site facility was inadequate for Ms. Loehrs' examination. (*Id.* at 93:3–5.) Defense counsel noted, "[A]s Ms. Loehrs indicated, in her lab things are as secure as they can potentially be." (*Id.* at 93:13–14.) The government argued that producing a mirror image copy would violate 18 U.S.C. § 3509(m), which directs courts to deny "any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography, so

---

Loehrs: And again, I disagree, because in theory that means I'm shutting down my lab and I'm not going to do that. I'm a business.

(*Id.* at 29:1–13.)

6

long as the Government makes the property or material reasonably available to the defendant."[4] The government argued that it has made the material reasonably available and defendant has had ample opportunity to examine it. (*Id.* at 94:8–22.) The government took the position the law does not require that defendant have equal access to the evidence. (*Id.*) The government also argued that Loehrs' testimony demonstrated that she did not "have any real specific recollection of this case." (*Id.* at 94:23–25.)

The magistrate judge granted defendant's motion in an oral decision from the bench, made immediately following argument. (ECF No. 85.) She ruled as follows:

> As to the victims, I have read and take very seriously what they put before me, and I agree that protecting them is paramount. What the defense is requesting, however, does not mean that anyone who would not otherwise see the images at HSI would see them, and I think that their need for privacy and protection would be adequately addressed by a protective order. So I don't fid [sic] that to be dispositive in this case.

---

[4] Section 3509(m) provides in full as follows:

**(m) Prohibition on reproduction of child pornography.—**

> **(1)** In any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) shall remain in the care, custody, and control of either the Government or the court.
>
> **(2)(A)** Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography (as defined by section 2256 of this title), so long as the Government makes the property or material reasonably available to the defendant.
>
> **(B)** For the purposes of subparagraph (A), property or material shall be deemed to be reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial.

18 U.S.C. § 3509(m).

> The question is whether the evidence can be made reasonably available to the defense on site at HSI, and reasonable availability is defined statutorily as an ample opportunity to conduct examination. And I think that that has to mean ample opportunity to conduct whatever–what examination the defense has determined is necessary.
>
> I have to say I am quite troubled by the inaccuracies in Ms. Loehrs' original declaration. It does create a problem for the defense that was avoidable, and Mr. Sigal did quite a skillful job with impeachment.
>
> But even so, I find Ms. Loehrs' testimony credible that mobile forensic equipment is simply not powerful enough and otherwise inadequate to support the specific examinations that would enable her to answer the questions that have been presented to her by the defense in their letter retaining her and asking for an expert opinion.[5]
>
> And I also think it's clear from the testimony that although it may be theoretically technically possible to conduct those examinations on site, it's certainly not practically possible, given the fact that even four or six laptops plugged into that room can't run the programs according to the testimony; and that part of the testimony wasn't impeached or rebutted to my satisfaction.
>
> So for those reasons, I do grant the motion . . . .

(ECF No. 89 at 97:21–99:3.) As noted, the magistrate judge stayed her order pending the government's appeal to this court. (*Id.*) Having carefully considered the parties' arguments, the record before the court and good cause appearing, the court now REVERSES the magistrate's decision for the reasons explained below.

II. STANDARD OF REVIEW

Where a magistrate judge is designated to hear a discovery motion, as in this case, "[a] [district] judge of the court may reconsider . . . where it has been shown that the magistrate [judge]'s order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see* Fed. R. Crim. P. 59(a); Local Rule 303(f); *United States v. Saldana-Beltran*, 37 F. Supp. 3d 1180, 1185 (S.D. Cal. 2014); *United States v. Gillespie*, No. 08-233, 2009 WL 728458, at *1 (E.D. Wis. Mar. 17, 2009) (considering "a motion to obtain a mirror image of the computer hard drive involved in

---

[5] The government's motion also challenges the magistrate judge's reliance on the defense letter, which the government has not seen. Given its resolution of the motion below, the court need not reach this argument.

8

th[e] case"). The magistrate judge's ruling is "clearly erroneous" only if, after reviewing the entire record, the district court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Silverman*, 861 F.2d 571, 576–77 (9th Cir. 1988) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). "A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard." *Forouhar v. Asa*, No. 10-3623, 2011 WL 4080862, at *1 (N.D. Cal. Sept. 13, 2011); *see also Lowell v. United Airlines, Inc.*, 728 F. Supp. 2d 1096, 1100 (D. Haw. 2010). The latter standard is equivalent to de novo review. *See, e.g.*, *E.E.O.C. v. Peters' Bakery*, 301 F.R.D. 482, 484 (N.D. Cal. 2014); *Guidiville Rancheria of California v. United States*, No. 12-1326, 2013 WL 6571945, at *1 (N.D. Cal. Dec. 13, 2013); *Dagdagan v. City of Vallejo*, 263 F.R.D. 632, 637 (E.D. Cal. 2009); *Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 422 (C.D. Cal. 1999).

Here, the magistrate judge's construction of the statute at issue also means the standard of review is de novo. *United States v. Wright*, 625 F.3d 583, 614 (9th Cir. 2010) (reviewing "de novo questions of the Adam Walsh Act's construction"), *superseded by statute on other grounds as noted in United States v. Brown,* 785 F.3d 1337 (9th Cir. 2015).

III. DISCUSSION

    A. Federal Rule of Criminal Procedure 16 and § 3509(m)

Generally, Rule 16 requires the government to allow a defendant to inspect and copy any materials relevant to the defense preparation, any materials the government intends to use in its case in chief, or any materials the government obtains from the defendant. *See* Fed. R. Crim. P. 16(a). Notwithstanding Rule 16, § 3509(m) provides that child pornography "shall remain in the care, custody, and control of either the Government or the court" following seizure in any criminal proceeding. Hence, "the Adam Walsh Act [has] altered the balance of pre-trial discovery under Rule 16 . . . ." *Wright*, 625 F.3d at 614. The statute expressly directs the courts to deny any requests by the defendant to copy or in any way reproduce such material, "so long as the Government makes the property or material reasonably available to the defendant." 18 U.S.C. § 3509(m)(2)(A).

/////

> "Reasonably available" means
>
>> the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial.

18 U.S.C. § 3509(m)(2)(B). The Act does not define "ample opportunity," and the Ninth Circuit has not "define[d] the exact parameters of what it means to give a defendant 'ample opportunity.'" *Wright*, 625 F.3d at 616–17. The Circuit has held the Act does not require "that the defendant and the government have *equal access* to the child pornography evidence." *Id.* (emphasis in original) (citing with approval *United States v. Cordy*, 560 F.3d 808, 816 (8th Cir. 2009) (defense counsel had ample opportunity based on having access to computer data for three months)). In *Wright*, where the defendant had access to the hard drive seized by the government for fourteen months in a secure government location, the defense expert used his own equipment, and defendant made no claim that the "defense team's work product was compromised in any way[,]" the Ninth Circuit found the defendant was given "ample opportunity for inspection, viewing, and examination under the Act." 625 F.3d at 615, 617 (internal quotation marks omitted).

    B.    <u>Background on § 3509(m)</u>

The stated purpose of the Adam Walsh Act is "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248 (H.R. 4472), 120 Stat. 587. The congressional findings made in the course of adopting the Act include the following:

> (D) Every instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse.
>
> (E) Child pornography constitutes prima facie contraband, and as such should not be distributed to, or copied by, child pornography defendants or their attorneys.

/////

/////

> (F) It is imperative to prohibit the reproduction of child pornography in criminal cases so as to avoid repeated violation and abuse of victims, so long as the government makes reasonable accommodations for the inspection, viewing, and examination of such material for the purposes of mounting a criminal defense.

*Id.* § 501.

At least one court has construed the Act's purpose as "ensur[ing] that the child pornography used in criminal trials does not escape into the public domain." *United States v. Johnson*, 456 F. Supp. 2d 1016, 1019 (N.D. Iowa Sept. 27, 2006). In support of his contention in this case that a protective order will suffice to safeguard the Act's purposes, (ECF No. 56 at 13), defendant relies on *United States v. Hill*, 322 F. Supp. 2d 1081 (C.D. Cal. June 17, 2004). In *Hill*, the defendant was indicted on one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). 322 F. Supp. 2d at 1083. The government intended to introduce into evidence over one thousand images of child pornography, and the defendant sought to obtain two "mirror image" copies of the computer media. *Id.* at 1091. The government opposed the production, "offering instead to permit the defense to view the media in an FBI office and to conduct its analysis in the government's lab." *Id.* The Ninth Circuit ruled that Rule 16 "clearly cover[ed] the items [the] defendant ha[d] requested." *Id.* It also approved the parties' stipulation, "setting forth procedures to be employed by defense counsel and his expert in the handling of [the] materials . . . ." *Id.* at 1092. But whether a protective order of the type approved in *Hill* is sufficient, defendant's reliance on that case is misplaced. *Hill* was decided in 2004, two years before Congress passed the Walsh Act, and thus does not inform this court's resolution of the Walsh Act discovery question before it.

Rather, in adopting § 3509(m), "Congress has [] balanced the public interest in prohibiting the dissemination of child pornography used in criminal trials with the public interest in reducing the costs of expert services for the indigent in favor of the public interest in prohibiting dissemination." *Johnson*, 456 F. Supp. 2d at 1020. It is not "the province of this court to strike a different balance." *See id.*

/////

/////

C. Defendant's Opportunity for Inspection, Viewing, and Examination

1. *United States v. Knellinger*

In *Wright*, the Ninth Circuit considered a case relied on by the defense, *United States v. Knellinger*, a district court decision from the Eastern District of Virginia. *See Wright*, 625 F.3d at 615–16. In *Knellinger*, the defendant's expert witnesses testified they would not agree to work on the case if they could only perform their examinations at a government facility. 471 F. Supp. 2d 640, 647–48 (E.D. Va. Jan. 25, 2007). One expert testified that although he normally charged approximately $135,000 for his services in a child pornography case, he would charge approximately $540,000 in a case requiring analysis of material at an off-site location. *Id.* at 647. Significantly, the government presented no witness testimony or evidence to controvert that offered by the defendant. *Id.* at 649. The court in *Knellinger* held that "technical expert witnesses are a necessary component of the assessment and presentation of a viable legal defense," and ordered the government to produce a mirror image copy of the hard drive. *Id.* at 649–50. In *Wright*, the Ninth Circuit distinguished the case before it from *Knellinger*:

> Unlike in *Knellinger*, Wright's forensic expert, Lavaty, claimed he was "comfortable" with the parties' terms for providing Wright access to the hard drive. Wright was afforded fourteen months to conduct his examination and does not claim that the agreed upon terms entered into by the parties precluded Wright from pursuing a viable defense theory. Rather, Wright bases much of his argument on the fact that prior to the Adam Walsh Act being passed into law, the district court found that the government's proposed terms of access "would hamper defendant's preparation of this case," and thus ordered the government to provide Wright a mirror copy of the hard drive. However, that ruling bears little, if any, relevance to whether the government's proposed terms provided Wright with "ample opportunity" to examine the evidence.

*Wright*, 625 F.3d at 616. The court ultimately held Wright was not entitled to a mirror image copy. *Id.* at 617. While it declined to define "ample opportunity," the court impliedly rejected the definition offered by the magistrate judge in her ruling here, as the opportunity "to conduct whatever – what examination the defense has determined is necessary." In this respect, the magistrate judge based her decision on an incorrect legal standard.

As in *Wright*, the facts of the instant case are distinguishable from *Knellinger*. While Ms. Loehrs has not said she is "comfortable" with the terms of access, the government has presented evidence to controvert defendant's evidence, including Loehrs' testimony as relevant to this case. Mr. Blackwelder's direct testimony establishes that defendant and his experts viewed the evidence a total of 21 times over a period exceeding one year, and that neither defendant nor either of his two experts have raised any objections or concerns to the HSI case agents regarding their access to the evidence during that period. Ms. Loehrs in particular paid only one visit, over two days, with one forensic laptop, and attempted without success to run unspecified "processes." Accepting this testimony as accurately describing Ms. Loehrs' visit, this court finds it is not sufficient given the absence of meaningful detail to demonstrate a lack of "reasonable availability" or deprivation of an "ample opportunity" for inspection, viewing and examination.

Though Ms. Loehrs' direct testimony established her personal opinion that she could not conduct an examination at an off-site location, on cross-examination she acknowledged that such an exam would be "technically possible" although not, for her, practical. Ms. Loehrs said her other professional commitments would prohibit her from conducting the kind of exam required even if the government "gave [her] everything" she needed to do so.[6] (*See* ECF No. 89 at 52.) While the court is not insensitive to Ms. Loehrs' assessment of her practical inability to provide the services the defense has requested of her, it also cannot find that her conclusion in this case is supported by the record, where there is no indication she explored with the defense or the government intermediate approaches.

---

[6] Elsewhere, the transcript reads:

> Government: But when – if the defendant and the government agreed on a protective order that gave you access to whatever equipment you would need and you could bring, in theory you could bring all of that stuff here?
>
> Loehrs: And again, I disagree, because in theory that means I'm shutting down my lab and I'm not going to do that. I'm a business.

(ECF No. 89 at 29.)

13

The "right to expert assistance does not confer a constitutional right to choose a specific expert." *United States v. Winslow*, 2008 U.S. Dist. LEXIS 66855, at *29 (D. Alaska Jan. 28, 2008) (citing *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985)). Here, defendant has proffered the opinion of only one witness, his second expert. The record does not establish that the government's inability to satisfy Ms. Loehrs' particular demands means the government has not made the defendant's hard drive "reasonably available" by providing "ample opportunity" for inspection. Given the weakness of the evidentiary record, this court concludes the magistrate judge's order granting the defense request was mistaken.

### 2. Other Court Decisions

Because the law on Walsh Act discovery is still developing, the court reviews other cases to test its conclusion.

In *United States v. Flinn*, a case from this district reviewed by the magistrate judge in her bench order, the court declined to follow the "*Knellinger* template." 521 F. Supp. 2d 1097, 1102 (E.D. Cal. Oct. 16, 2007). In *Flinn*, "defendant . . . argue[d] that given the needs of a defendant in a child pornography case, the defense [could] essentially never have an 'ample opportunity' to inspect the contraband unless the expert [was] free to take the contraband, or a mirror image, to the expert's own facilities for use with the expert's own devices/software." *Id.* at 1098. The court disagreed with the defendant and found:

> [E]vidence [has not] been presented that if [defendant's expert] refuses to forensically examine the hard drive and thumb drive at the [government] facility, there is not an available, satisfactory expert who can and will—at a cost not greatly exceeding what might be incurred if the analyses were to be performed in a home or office environment. While a defendant is entitled to a defense which comports with due process, he is not entitled to the "best defense money can buy." The fact that some extra cost will be incurred because of § 3509(m) was surely something that Congress considered. Nor is the defense entitled to an expert who simply refuses to even try to conduct his [or her] examination under congressionally prescribed standards.

*Id.* at 1102–03 (internal citations omitted).

In *Busby v. United States*, a case from the Northern District of California, the defendant's expert witness was Ms. Loehrs. In that case, as in this one, she testified that the government-supplied equipment and software was inadequate for the purposes of conducting an examination off-site from her own lab. No. 11-00188, 2012 WL 5077144, at *4 (N.D. Cal. Oct. 18, 2012). The district court found, "[w]hile Defendant's expert's desire to inspect the hard drives in her facility in Arizona is understandable, that preference is insufficient to establish the Government's alleged failure to make the subject evidence 'reasonably available' within the meaning of the Adam Walsh Act." *Id.*

Many other courts to consider the question have determined that a defendant's increased costs and procedural difficulties are not reasons to undercut the courts' deference to the congressionally approved framework adopted in § 3509(m). *See United States v. Spivack*, 528 F. Supp. 2d 103, 107 (E.D.N.Y. 2007); *United States v. Battaglia*, No. 07-0055, 2007 WL 1831108, at *4–6 (N.D. Ohio June 25, 2007); *United States v. Hornback*, No. 10-13, 2010 WL 4628944, at *3 (E.D. Ky. Nov. 8, 2010); *United States v. Rettenmaier*, 14-00188, ECF No. 56 (C.D. Cal. May 26, 2015). *See also United States v. Jarman*, 687 F.3d 269, 271 (5th Cir. 2012) ("to the extent that the district court equated inconvenience to the expert or complexity of the case with a failure to make child pornography evidence reasonably available, we reject such rationale."). One court has found the government did not make material reasonably available, but only because the defendant's expert in that case, unlike here, was subject to a physical search of his person before allowed to leave the government's off-site facility. *United States v. Bortnick*, No. 08-20151, 2010 WL 935842, at *3 (D. Kan. Mar. 11, 2010).

Absent controlling direction from the Ninth Circuit, this court joins the majority of the courts cited above in narrowly construing § 3509(m), focusing on "reasonable availability" as a threshold matter, while limiting the definition of "ample opportunity" to that which provides access to what is reasonably necessary to satisfy due process without requiring whatever examination the defense determines is necessary.

/////

/////

3. Alternative Request for Equal Limitations

Defendant also argued to the magistrate judge that if the court denied his motion for a mirror copy, the court should impose identical limitations on the government's access to the hard drive because "[w]ithout such equal access, the government will have an unfair advantage over the defense . . . ." (ECF No. 56 at 15.) The magistrate judge did not need to reach that argument in light of her resolution of the motion; this court does. In light of the Ninth Circuit's decision in *Wright*, the argument is unavailing. In addressing the same argument in *Wright*, "whether the Adam Walsh Act requires that the defendant and the government have *equal access* to the child pornography evidence[,]" the court specifically found "this is not what the Act provides." *Wright*, 625 F.3d at 616 (emphasis in original). The Act "provides only that the defendant be given 'ample opportunity' to examine the evidence." *Id.; see also Busby*, 2012 WL 5077144, at *4 (Walsh Act "simply does not entitle criminal defendants to equal access to the evidence supporting a child pornography charge").

IV. CONCLUSION

For the foregoing reasons, the court REVERSES the magistrate judge's ruling and DENIES defendant's request.

IT IS ORDERED.

DATED: September 1, 2015.

_____
UNITED STATES DISTRICT JUDGE