PHILLIP A. TALBERT
Acting United States Attorney
AUDREY B. HEMESATH
JOSH F. SIGAL
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ALBERT LEE MITCHELL,

Defendant.

CASE NO. 2:12-CR-401 KJM

GOVERNMENT'S TRIAL BRIEF

DATE: June 6, 2016
TIME: 9:00 a.m.
COURT: Hon. Kimberly J. Mueller

## I. INTRODUCTION

Trial begins June 6, 2016 at 9:00 a.m. The estimated trial time is approximately 3 days. The defendant is out of custody. Albert Lee Mitchell was indicted on November 15, 2012 on a single count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2).

## II. JOINT STATEMENT OF THE CASE

The parties have consulted and agree to the following joint statement:

The United States of America, through its attorneys, Assistant U.S. Attorneys Audrey B. Hemesath and Josh F. Sigal, in agreement with the defendant, Albert Lee Mitchell, through his counsel of record, Michael Chastaine, submit the following proposed joint statement of the case:

//

//

//

This is a criminal case brought by the United States government. Defendant Albert Lee Mitchell is charged in the Indictment with violations of federal law. The indictment alleges that between on or about no later than April 16, 2012, and continuing through on or about November 5, 2012, Mr. Mitchell received images of child pornography. To these charges, Mr. Mitchell has entered a plea of not guilty. These charges are only accusations, nothing more.

## III. STATEMENT OF FACTS

Homeland Security Investigations (HSI) first identified a computer offering files of suspected child pornography in October 2012. After identifying the Internet Protocol (IP) address of the computer offering files of suspected child pornography, HSI investigators obtained a search warrant based on the IP address location.

The search warrant was executed at the residence of Albert Lee Mitchell on November 5, 2012. At the time of the search, dozens of images of suspected child pornography were set to be downloaded on the eDonkey file-sharing network on a computer located at the search site. Mitchell admitted to ownership of the computer and to being its sole user, and noted that the room where the computer was located was his office. During a forensic preview of the computer, a trained forensic computer examiner confirmed that the computer was set to download and share files with names consistent with child pornography. A subsequent forensic review of the computer and other devices found in the defendant's home office revealed a collection of thousands of depictions of child pornography.

Mitchell was arrested on the same day as the search and was charged by criminal complaint with receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). On November 15, 2012, an indictment was filed charging the defendant with one count of receipt of child pornography.

//

//

//

//

//

# IV. EVIDENCE

## A. Primary Evidence

The search of Mitchell's house revealed a large quantity of child pornography stored on ten different digital devices in Mitchell's home office and in his garage. The government narrowed the scope of what it will seek to prove at trial significantly when it sent a request for notice of any alibi defense with respect to the following 13 videos:

| # | Evidence Item | File Name | File Download Date | Time |
|---|---|---|---|---|
| 1 | Line #1 | 005.part | 7/5/2012 | 12:20:59 AM |
| 2 | Line #1 | 006.part | 7/4/2012 | 1:04:07 AM |
| 3 | Line #1 | 017.part | 7/3/2012 | 2:39:47 PM |
| 4 | Line #1 | 043.part | 7/17/2012 | 2:41:14 PM |
| 5 | Line #2 | 089.part | 10/30/2012 | 5:19:44 AM |
| 6 | Line #2 | 090.part | 10/29/2012 | 8:26:51 PM |
| 7 | Line #2 | 002.part | 9/25/2012 | 2:58:45 PM |
| 8 | Line #2 | 019.part | 8/31/2012 | 2:38:23 PM |
| 9 | Line #3/Partition 1 | 013.part | 9/26/2012 | 3:00:38 PM |
| 10 | Line #3/Partition 1 | 082.part | 10/28/2012 | 10:25:15 AM |
| 11 | Line #3/Partition 1 | 001.part | 8/25/2012 | 11:43:49 AM |
| 12 | Line #3/Partition 3 | 018.part | 6/24/2012 | 6:49:44 AM |
| 13 | Line #3/Partition 3 | 021.part | 7/21/2012 | 8:15:48 PM |

The government will elicit testimony about the content of the videos, the location of the videos, and the meaning of the download date and time.

"Received" means "downloaded." *United States v. Mohrbacher*, 182 F.3d 1041, 1048 (9th Cir. 1999). Some of the times in this list represent the initiation of download (items 9-11). Some represent the download of additional chunks of the file (1-8, 12-13). The mechanics of the downloads will be explained via agent testimony.

## B. Witnesses

A witness list has been concurrently filed with this brief. The government has erred on the side of including witnesses and may not call every witness on the list, particularly in view of how the case develops at trial. The government's investigation of the case and preparation for trial continues, and the government reserves the right to add witnesses should it become necessary.

These witnesses are:

- Law enforcement witnesses (HSI Special Agent Michael Barge, who was present at the search and interviewed Mitchell; HSI Special Agent Kurt Blackwelder, who has been

noticed by the government as an expert in computer forensics; HSI Special Agent Mark Martinez, who has been noticed by the government as an expert in Linux and computer forensics; HSI Special Agent Nicole Solander, who initiated this investigation; HSI Special Agent Jack Comer, who was present at the search and when Mitchell was interviewed)

- Victim witness Daniel Ben-Meir
- Witness from Iomega who will testify to the interstate commerce element
- Attribution witnesses, who will confirm that documents created on the tower computer were sent to them by Mr. Mitchell (Brittny Neva, Kathy Hammond, Carmen Carrillo)

### C. Exhibits

An exhibit list is being filed concurrently with this brief. The exhibits are from these categories of evidence:

- Video clips of child pornography downloaded during the timeframe charged in the indictment (these clips are the subject of a motion in limine).
- Attribution evidence taken from the computer that tends to show that Albert Lee Mitchell was its primary user and was the person sitting at the keyboard at the time certain images were downloaded.
- Photographs taken during the execution of the search warrant.
- Screen shots from the tower computer
- Physical evidence seized during the search warrant (various computers and hard drives).
- Summary charts

## V. THE INDICTMENT

Mitchell is charged with a single count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). The elements are:

 (1) between on or about April 16, 2012, and on or about November 5, 2012, Mitchell knowingly received one or more visual depiction(s) in interstate commerce;

 (2) the production of such visual depiction(s) involved the use of a minor engaging in sexually explicit conduct;

(3) such visual depiction was of a minor engaged in sexually explicit conduct;

(4) Mitchell knew that such visual depiction was of sexually explicit conduct; and

(5) Mitchell knew that at least one of the persons engaged in sexually explicit conduct in such visual depiction was a minor.

## VI.     EVIDENTIARY ISSUES

### A.     The Defendant's Own Statements

The government may elicit testimony regarding Mitchell's own statements and representations, both to fact witnesses and to law enforcement. Fed.R. Evid. 801(d)(2). On the other hand, Mitchell's own out-of-court statements, when offered by him, are hearsay and thus inadmissible. Fed.R.Evid. 801(c). Thus, Mitchell cannot introduce his own statements through other witnesses but, instead, must testify in Court if he wishes to offer such testimony. *United States v. Mitchell*, 502 F.3d 931, 964-65 (9th Cir. 2007) ("There statements [by defendant] were inadmissible hearsay; as [defendant] was attempting to introduce them himself, they were not party-opponent admissions, nor did the fact that they were made more broadly self-inculpatory confession bring them within the statement-against-interest exception."); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (affirming trial court's preclusion of defendant eliciting on cross-examination exculpatory statements given to law enforcement officer); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988) ("It seems obvious defense counsel wished to place [defendant's denial to police officer] before the jury without subjecting [defendant] to cross-examination, precisely what the hearsay rule forbids.").

The rule against a defendant eliciting his own hearsay statements through examination of other witnesses includes situations in which the witnesses have testified as to other statements made by the defendant during the same conversation that are inculpatory. *Ortega*, 203 F.3d at 682 (rejecting arguments that defendant should be permitted to introduce own statements because agent testified as to other inculpatory statements made as part of the same conversation, and holding rule of completeness does not apply to oral statements). A defendant is not permitted "to use the Confrontation Clause as a means of admitting hearsay testimony through the 'back door' without subjecting himself to cross-examination."). *Id.*

**B. Agent Testimony**

Most of the government's case will be proven through the testimony of agents about the execution of the search warrant and the computer forensics performed after the search warrant.

The agents also will testify about statements Mitchell made in the course of a voluntary, noncustodial interview, a written record of which was provided in discovery. Mitchell invoked his Fifth Amendment rights mid-interview; the government agrees with the defense motion in limine stating that the jury cannot learn that Mitchell invoked his rights and requests permission to lead Special Agents Michael Barge and/or Jack Comer during this portion of testimony to avoid accidental reference to the invocation of rights.

After invoking his Fifth Amendment rights and being joined by an attorney acquaintance during the remainder of the search, Mitchell agreed to open the safe agents found in the house. Additional child pornography was found in the safe. Agents will testify that Mitchell successfully opened the safe, but will not testify to the presence of the attorney nor any statements that may have been made after the invocation.

Special Agent Barge may also testify to a statement Mitchell made during a session of defense review of the discovery. Special Agent Barge noted in a report that has been provided to the defense Mitchell's statement that he recognized his music file as a backup folder on a seized computer.

**C. Evidence of Other Child Pornography on the Computers**

As indicated above, the government's case-in-chief will center on exhibits and testimony related to 13 videos that were downloaded during the timeframe alleges in the indictment (on or about April 16, 2012 – November 5, 2012). The government analyzed all the digital devices seized from Mitchell's house. Ten of these devices were found to contain child pornography.

To prove that Mitchell knowingly received child pornography, the government will elicit testimony about the existence of child pornography on these other devices. This evidence is admissible under Fed. R. Evid. 401, 402, and 403. First, that the child pornography is disbursed across ten different devices, all found in Mitchell's home, is probative that it was Mitchell who received the child pornography, not anyone else.

Second, the sheer volume of images and videos is probative of knowledge. The volume of

images and videos so overwhelms the non-pornographic content of Mitchell's primary computer that it is implausible that he did not know that content was there.  This is particularly true in light of the evidence that Mitchell routinely backed up his computer—the length of the backup and the amount of space required to back up the computer would be noticeable.

Third, the fact that the downloads occurred over a long span of time, even preceding the indictment, proves that Mitchell knew he was downloading these images.  It also makes it more likely that the person doing the downloading was Mitchell—the resident of the house and owner of the computers—rather than a guest.

Finally, the organization and location of the totality of the child pornography is indicative of a collection.  The 13 downloads are part of a continuing course of conduct.  It is highly relevant that the computers show an organized folder structure, proving that the user manually typed in folder names and sorted the images and videos to the folders.  It is highly relevant that many of the images and videos are backed up to one or more devices, demonstrating the value or importance of the collection to the user.

Evidence should not be considered "other crimes" or "other act" evidence within the meaning of Rule 404(b) "if the evidence concerning the 'other' act and the evidence concerning the crime charged are inextricably intertwined." *United States v. Dorsey*, 677 F.3d 944, 951-52 (9th Cir. 2012) (internal quotation omitted).  Such is the case here.  The government will focus its presentation on the 13 videos noted above and provided in its alibi defense.  But the government will also elicit testimony about the existence of child pornography on the other devices and will introduce summary charts specifically about three of the devices.  The government will present evidence about the folder structure and organization of backups.  The government will not show clips or images or describe the actual content of any of these additional depictions.

Alternatively, the evidence is admissible under Fed.R.Evid. 404(b), demonstrating opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  *United States v. Hardrick*, 766 F.3d 1051 (9th Cir. 2014).   The government hereby provides the required notice under that Rule.  Although it is close to trial, the discovery provided in 2012, specifically the report of Special Agent Barge describing his review of the devices for child pornography, made clear the quantity of child pornography at issue in this case.  To the extent that the Court permits testimony regarding the existence

of other images under a 404(b) theory only, a limiting instruction would be appropriate. *United States v. Ganoe*, 538 F.3d 1117, 1124 (9th Cir. 2008).

**D. 902(11) Business Records**

The government will seek to admit an exhibit from Comcast indicating the subscriber information for the IP address at issue in this case. The government will introduce the exhibit during the testimony of one of the law enforcement witnesses, moving for the admissibility of the document as a self-authenticating business record pursuant to Federal Rules of Evidence 803(6) and 902(11).

**E. Counseling for Jurors**

The Court may authorize counseling for jurors and court personnel exposed to evidence of child pornography. During their time of service, jurors are considered federal employees. Consequently, jurors may receive counseling through Federal Occupational Health-United States Health and Human Services for trauma incurred by their federal service. This includes trauma caused by the viewing of images of and the taking of testimony about the sexual molestation of children. Payment for these sessions is coordinated between the Administrative Offices of the United States Courts and FOH-HHS. The government asks that the jurors be notified of their entitlement to counseling at some point before the end of their service.

**F. Attribution Evidence**

The government will introduce evidence that Mitchell authored other documents during the time the child pornography was downloaded, tending to prove that Mitchell was the individual who received the child pornography. This attribution evidence includes a letter to a woman regarding an automobile accident and a letter to an adult woman with whom Mitchell appears to have been pursuing a romantic relationship. The government seeks to admit these documents not for the content of the communication, but instead to prove authorship—that Mitchell was the individual sitting at the computer keyboard at these times and dates.

**G. Interstate Commerce**

Receipt of child pornography contains an interstate commerce element. This element can be satisfied in one of several ways, including showing that the pornographic images traveled in interstate commerce or that materials used to receive or possess the images moved through interstate commerce.

*United States v. Lynn*, 636 F.3d 1127, 1136 (9th Cir. 2011). Movement through interstate commerce can be accomplished by any means, including by computer. 18 U.S.C. § 2252(a)(2).

The prosecution may also satisfy the interstate commerce element by putting on testimony that some of the child pornography videos the defendant received or distributed were created outside California. *See Lynn*, 636 F.3d at 1135; *see also United States v. Flocker,* 504 F. App'x 637, 640 (9th Cir. 2013) (finding sufficient evidence to support the interstate commerce element in child pornography distribution case where testimony showed that "Jesse" series photographs of a minor had been taken in another state than the one where offense conduct occurred and one of defendant's uploaded photos on the Internet involved that same victim and same background).

In a recent filing, the defense has indicated a willingness to stipulate to this element; the parties will advise the Court before trial if they have reached a stipulation.

**H. <u>The Government Does Not Accept The Child Pornography Stipulation</u>**

The defense has indicated it will stipulate that the depictions are child pornography. ECF No. 138. But, the defense will not stipulate that Mitchell *knew* the child pornography was downloaded onto his computer. ECF No. 140. The government bears the burden of proving scienter. *United States v. Hardrick*, 766 F.3d 1051 (9th Cir. 2014) (upholding admission of child pornography clips as probative of the defendant's knowledge and the credibility of his defenses).

Even if the defendant stipulates that the visual depictions are, in fact, child pornography, the content of these filed should still be admitted, as "courts are in near-uniform agreement that the admission of child pornography images or videos is appropriate, even where the defendant has stipulated, or offered to stipulate, that those images or videos contained child pornography." *United States v. Cunningham*, 694 F.3d 372 (3d Cir. 2012) (citing *United States v. Ganoe*, 538 F.3d 1117, 1123-24 (9th Cir. 2008); *United States v. Polouizzi*, 564 F.3d 142, 153 (2d Cir. 2009); *United States v. Schene*, 543 F.3d 627, 643 (10th Cir. 2008); *United States v. Morales-Aldahondo*, 524 F.3d 115, 120 (1st Cir. 2008); *United States v. Sewell*, 457 F.3d 841, 844 (8th Cir. 2006); *United States v. Dodds*, 347 F.3d 893, 898-99 (11th Cir. 2003).

Here, showing the evidence to the jury will demonstrate that even a cursory view of the files depicts prepubescent minors engaging in sexually explicit conduct. This evidence is very relevant to the

knowledge element the government is required to prove. Fed.R.Evid. 401. This is particularly so if Mitchell's defense is that these were his computers that he used, but someone else downloaded the videos without his knowledge.

Relevant evidence is generally admissible. Fed.R.Evid. 402. Exclusion of relevant evidence under Fed.R.Evid. 403 should be "cautious and sparing," because its "major function is limited to excluding matters of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). The rule prevents admission only if the dangers of unfair prejudice substantially outweighs the probative value. The government does not deny the emotional impact of the video clips in this case. But, the Ninth Circuit has endorsed the proposed procedure of ten clips or less, less than one minute. *Ganoe*, 538 F.3d at 1124. The whole point of this procedure is to avoid unfair prejudice.

Mitchell's proffered stipulation does not "supply evidentiary value at least equivalent to what the Government's own evidence carried." *Old Chief v. United States*, 519 U.S. 172, 186 (1997). The government is within its discretion to decline the proposed stipulation. "[T]he prosecution is entited to prove its case by evidence of its own choice." *Id*. at 186. Excluding the video clips and substituting a stipulation that the images are child pornography prevents the jury from learning the nature of the depictions found on Mitchell's computer. Evidence of the nature of the videos is of high evidentiary value for the government: the government's theory is the videos are so graphic, so obviously child pornography that it is unbelievable that there could be thousands of these images sorted and organized across ten different devices in the defendant's office and garage, without his knowledge. "[A] criminal may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Id*. at 186-87.

## I. <u>Demonstrative Aids & Summary Charts</u>

One or more of the HSI agents may use summary exhibits during testimony. Fed.R. Evid. 1006. These summaries distill the voluminous evidence recovered during the computer forensic examination of the defendant's devices. The proposed summary charts have been provided in discovery.

The government may also utilize demonstrative aids in closing. The government will provide copies of these demonstrative aids to the defense in advance of closing.

### J. Expert Witness Testimony

Both parties have noticed expert witnesses. The government's primary expert witness is computer forensic analyst HSI Special Agent Kurt Blackwelder, who is also one of the case agents. HSI Special Agent Mark Martinez is expected to testify regarding the operating system, Linux, and his examination of some of the devices.

## VII. POSSIBLE DEFENSES

### A. Notice Defenses

The possibility of an alibi defense is the subject of a separately-filed motion in limine. The defense has recently provided additional alibi discovery. The government continues to request notice as provided in Fed.R.Crim.P. 12.1(a)(2). Specifically, the defense has not yet provided the name of any witness who will testify in accordance with the defense discovery. The government will seek to bar any unnoticed defense alibi witnesses at trial.

### B. George Perry

The defense has provided reciprocal discovery and trial pleadings indicating a possible defense involving Mitchell's former friend, George Perry. According to a defense investigative report, George Perry admitted to ownership of a book (*Show Me*), which the defense investigator opines is child pornography. Mitchell claimed the book was stored in a box in the rafters of Mitchell's garage. Mitchell's out-of-court statements are hearsay. Perry's out-of-court statements are also hearsay.

The government will object to any questions that seek to elicit any out-of-court statement:

- made by Perry to Mitchell
- made by Perry to the defense investigator
- made by Perry to any family member of Mitchell

These statements would be inadmissible hearsay. Fed.R.Evid. 802.

Similarly, the government will object to any defense questions that seek to elicit any statement:

- made by Mitchell to a family member about Perry
- made by Mitchell to a member of the defense team about Perry or anything Perry did or possessed
- made by Mitchell to Perry

The *government* may introduce Mitchell's out-of-court statements. Fed.R.Evid. 801(d)(2) (non-hearsay admissions of a party-opponent). The defense may not. Fed.R.Evid. 801(d)(2); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) ("non-self-inculpatory statements are inadmissible even if they were made contemporaneously with other self-inculpatory statements.").

The rule against hearsay includes any knowledge that is based on hearsay. A witness must have "personal knowledge of the matter" to which she testifies. Fed.R.Evid. 602. If the witness only has knowledge based on inadmissible hearsay, that testimony should also be excluded. Fed.R.Evid. 802. This would include any statement about:

- whether George Perry had permission to use Mitchell's computer;
- whether George Perry was allowed access to the house or home office in Mitchell's absence;
- whether George Perry had access to Mitchell's network;

unless the witness was the person who gave George Perry that permission or access. Otherwise, the witness's knowledge would be based on a hearsay statement (e.g., Albert Mitchell telling his wife that George Perry had his permission use the computer).

### C. "Missing Witness" Argument

At the conclusion of trial, there may be witnesses neither side has called: for example, George Perry.

The government may comment on a defendant's failure to call a witness without shifting the burden of proof, so long as there is no comment on the defendant's failure to testify. *United States v. Cabrera*, 201 F.3d 1243, 1250 (9th Cir. 2000). If the defense has pointed the finger at George Perry but not called him, it is permissible for the government to argue that the jury may draw an inference from the absence of Perry. *United States v. Ramirez*, 714 F.3d 1134, 1139 (9th Cir. 2013) ("A judge may not preclude the jury from drawing any inferences that it may legitimately draw. The sua sponte instruction, therefore, was error. By instructing the jurors to disregard any uncertainty about why the prosecution didn't call a witness—who might have been the key witness—the court improperly inserted itself into the jury room and interfered with the jury's role as a factfinder."). Arguing for the jury to make such an inference does not itself impermissibly shift the burden of proof.

## VIII.  FORFEITURE ALLEGATION

The United States also seeks to forfeit any and all interest the defendant has in devices upon which he stored child pornography.  The government seeks their forfeiture on the theory that the defendant used these devices to commit or to facilitate the commission of the crimes alleged in the indictment.  These devices include: one Iomega desktop hard drive; one Iomega external hard drive; one HP computer tower; one Dell laptop; one Avertec laptop; one My Book external hard drive; one Hitachi hard drive; one 80 gigabyte hard drive; one Western Digital hard drive; two white computer towers.

Here, the trial is to a jury, therefore, the "court must determine before the jury begins deliberating whether either party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict."  Fed. R. Crim. P. 32.2(b)(5).  The Ninth Circuit has held that Rule 32.2(b)(5) places an "affirmative duty on the court" to determine whether either the United States or defendant requests a jury determination regarding forfeiture.  *Mancuso*, 718 F.3d 780, 799 (9th Cir. 2013).  The inquiry must occur "before the jury retires."  *Id.*

The government is exploring the possibility of a stipulation with the defense to proceed by bench trial in the forfeiture phase.

## IX.  WITNESS EXCLUSION AND CASE AGENT DESIGNATION

The government will move for the exclusion of all witnesses until their testimony has been completed, pursuant to Fed. R. Evid. 615.  The government will further move that HSI Special Agents Michael Barge and Kurt Blackwelder be designated as case agents and thus exempt from the exclusion order, pursuant to Fed. R. Evid. 615; *see also United States v. Little*, 735 F.2d 1420, 1441 (9th Cir. 1984).

HSI Special Agent Mark Martinez is not a case agent, but the government submits that he should be present throughout trial because his testimony is expected to be based on the facts heard by other witnesses: specifically, any defense theory that the child pornography was downloaded remotely, or from another network, or that it was impossible for Mitchell to have been responsible for certain downloads.  A party's expert witness can be a person "essential to presenting the party's claim or defense."  *United States v. Sechillie*, 310 F.3d 1208, 1213 (9th Cir.2002).  The Advisory Committee Notes to Rule 615 contemplate as much, stating that this exception includes "'an expert needed to advise

counsel in the management of litigation.'" *Id.* Rule 703 provides that an expert "may base an opinion on facts or data in the case that the expert has been made aware of." Fed.R.Evid. 703. The Advisory Committee Notes to this rule elaborate further, providing that experts may base an opinion on facts presented at trial. *Id.*, Adv. Comm. Notes 1972.

Finally, it is anticipated that Paralegal Specialist Gwen Lincoln will be present with the government throughout trial to aid in the organization and presentation of exhibits.

## X. CONCLUSION

The foregoing is a summary of issues the government anticipates may arise at trial. Should any legal issues arise that have not been covered in this trial brief, the government respectfully requests leave to submit such further memoranda as may be necessary.

Dated:  May 27, 2016                                          PHILLIP A. TALBERT
                                                              Acting United States Attorney

                                                          By: /s/ Audrey B. Hemesath & Josh F. Sigal
                                                              AUDREY B. HEMESATH
                                                              JOSH F. SIGAL

                                                              Assistant United States Attorneys