UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. No. 2:12-cr-0401 KJM |
| Plaintiff, | ORDER |
| v. | |
| ALBERT LEE MITCHELL, | |
| Defendant. | |

Defendant Albert Lee Mitchell, proceeding pro se, has filed a motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 and an amendment thereto. Mot., ECF No. 218, Amendment, 219. The court appointed counsel to represent defendant. ECF No. 221. The government opposes the motion, and defendant has replied.[1] For the reasons explained below, defendant's motion is **denied**.

I.  BACKGROUND

The court derives the following facts directly from the Statement of the Case and Statement of Relevant Facts in defendant's opening brief on direct appeal, *United States v.*

/////

---

[1] Since appointment of counsel, defendant has also filed numerous pro se motions without leave of court. Those pro se motions are disregarded. *See* ECF No. 315.

*Mitchell*, No. 16-10500 (Statement), ECF 9, and this court's review of the record, including the transcripts of the trial proceedings.

> In October 2012 the Department of Homeland Security [hereinafter DHS] gained access to a peer-to-peer network known as eMule or eDonkey. DHS believed the peer-to-peer network was used by certain individuals who shared images of child pornography. The investigation ultimately led DHS agents to an IP address and computers associated with Albert Mitchell.
>
> On November 5, 2012 DHS executed a search warrant at Mr. Mitchell's residence. Seven desktop computers, three laptops, two cells [sic] phones, one tablet computer, and numerous other digital devices were seized.
>
> Subsequent investigation revealed child pornography was located on multiple devices.

Statement at 12–13.[2] Prior to trial, the defense sought "a mirrored copy of the computer at issue." *Id*. at 13. The magistrate judge granted the defense motion; on review, this court reversed that order. *Id*. at 15.

> In the late 1990s [defendant] was engaged in the business of designing electronic hardware. [Defendant] frequented various user groups on the internet in connection with this business. [Citation omitted.] In the course of frequenting these user groups [defendant] became acquainted with a man . . . name[d] George Perry and an organization known a[s] the Forth Interest Group. "Forth" is a specialized computer language used in controlling computer hardware.

*Id*. at 10. "Between approximately 2000 and 2012" defendant and Mr. Perry "maintained a friendly relationship." *Id.* at 11. At trial, defendant testified that at some point, Mr. Perry came to defendant's house and installed a Linux operating system on one of defendant's computers. Reporter's Transcript of Proceedings (RT 6/15/2016) at 225, ECF No. 186.

> The defense's theory of the case was that Mr. Perry remotely accessed Mr. Mitchell's computer and downloaded child pornography. At trial there was an issue regarding whether Mr. Mitchell's computer was capable of being remotely accessed.
>
> At trial, the government called Department of Homeland Security Special Agent Mark Martinez. Agent Martinez qualified as an expert on Linux. [2 ER 55-56].

---

[2] In this order, citations to page numbers in documents filed in the Electronic Case Filing (ECF) system of this court and of the United States Court of Appeals for the Ninth Circuit are to page numbers assigned by the ECF system and located in the upper right-hand corner of the page.

2

> Agent Martinez reviewed a forensic copy of Mr. Mitchell's computer. [2 ER 56.]
> Agent Martinez testified he did not find any remote login software. [2 ER 57].
>
> The defense expert, Dr. Brandenburg, testified screen shots in evidence, specifically Exhibit 307, showed just such a remote session occurring. [2 ER 60.] Dr. Brandenburg testified Linux is a multi-user system meaning two people could be on the same computer at the same time and they would not necessarily be aware of the other user. [2 ER 62.]

Statement at 15.

Jury trial began on June 13, 2016. *Id.* at 9. At trial it was undisputed there was child pornography on computers agents took from defendant's home in 2012; the sole issue in dispute' was the identity of the person who downloaded the child pornography onto the computers and, specifically, whether George Perry was in fact the individual who had effected the downloads. *See* Reporter's Transcript of Proceedings (RT 6/13/2016) at 140–144, ECF No. 184. Mr. Perry was called as a defense witness. Reporter's Transcript of Proceedings (RT 6/16/2016), ECF No. 187. On direct examination, Mr. Perry refused to answer any questions "for or against" himself concerning whether a hard drive containing child pornography was his, or whether he had ever downloaded child pornography. *Id.* at 106–107, 109. Outside the presence of the jury, the prosecutor raised a question concerning these responses, arguing the defense could not call a witness for the purpose of having the witness invoke the Fifth Amendment and signaling the government might "be entitled to move for a mistrial without jeopardy attaching." *Id.* at 113. After discussion with counsel, the court noted that Mr. Perry had "provided plenty of testimony without saying he would not respond," that he had not used the words "Fifth Amendment," that the full scope of his testimony could not be known until after completion of cross-examination, that the government could make a record and file a motion "after hours," and directed that the proceedings continue. *Id.* at 115. During cross-examination Mr. Perry repeatedly denied accessing defendant's computer. *Id.* at 127–130. The government did not move for a mistrial. The jury ultimately returned a guilty verdict against Mr. Mitchell. Statement at 9. This court later sentenced Mr. Mitchell to 120 months in prison to be followed by lifetime supervised

/////

/////

1  release. *Id*. At the sentencing hearing and in its Sentencing Statement of Reasons, the court

2  noted that

> without defendant's conviction by the jury, which supports the conclusion that he committed perjury on the stand in an effort to foist sole responsibility for the conviction offense on a third party who also testified, defendant likely would have received a sentence of 60 months, comparable to the sentence imposed on other defendants in light of all sentencing factors. In light of the inference of perjury, which also supports the obstruction of justice enhancement applied under the guidelines, the court found a doubling of the sentence appropriate to avoid unwarranted disparities in this case.

11  Sentencing Statement of Reasons, ECF No. 202.

12  On March 1, 2018, the United States Court of Appeals for the Ninth Circuit affirmed

13  defendant's conviction on direct appeal. *United States v. Mitchell*, No. 16-10500, slip op. at 2-3

14  (9th Cir. Mar. 1, 2018), ECF No. 210. The judgment of the Ninth Circuit became effective

15  March 23, 2018. After receiving an extension of time to file a § 2255 motion, ECF No. 215,

16  defendant filed the motion on June 28, 2019, ECF No. 218, and the amendment, ECF No. 219.

17  The government filed its opposition, Opp'n, ECF No. 248, and defendant filed a traverse, Reply,

18  ECF No. 306.

19  Defendant raises ten claims in his motion. First, relying on *Brady v. Maryland,* 373 U.S.

20  83 (1963), defendant makes numerous allegations that the government withheld exculpatory

21  evidence, destroyed evidence, and lost evidence it had seized. *See* Mot. at 2. Second, defendant

22  claims he is actually innocent of the charge on which he was convicted. *Id*. at 3. Third,

23  defendant raises numerous allegations of government misconduct. *Id*. Fourth, defendant claims

24  several violations of his Fourth Amendment rights. *Id*. at 3–4. Fifth, defendant claims his trial

25  counsel was ineffective and abandoned him. *Id*. at 4. Sixth, defendant claims violations of his

26  right to a speedy trial. *Id*. Seventh, defendant claims he was subject to "excessive bail and cruel

27  and inhumane treatment " prior to trial. *Id*. Eighth, defendant alleges several violations of his

28  right to due process. *Id.* at 5. Ninth, defendant claims a miscarriage of justice. *Id.* Finally,

29  /////

30  /////

31  /////

defendant claims sentencing errors. *Id.*[3] Defendant requests an evidentiary hearing "if necessary." *Id*. at 1.

In opposition, the government argues defendant procedurally defaulted on his first, third, fourth, sixth and seventh claims by failing to raise any of these claims on direct appeal. Opp'n at 16–19, 20–21. The government also contends defendant cannot challenge the conditions of his pretrial release on this § 2255 motion. *Id*. at 19–20. Finally, the government argues defendant's claims of actual innocence and ineffective assistance of counsel are without merit, and contends an evidentiary hearing is neither required nor warranted to decide the pending motion. *Id*. at 21–34. The government also contends the court should deny a certificate of appealability under 28 U.S.C. § 2253(c). *Id*. at 34

In the traverse, without waiving any claims raised in the pro se motion, *see* Reply at 1 n.1, defendant contends that application of the Adam Walsh Act, 18 U.S.C. § 3509(m), "together with a breakdown in the adversarial process" denied defendant adequate access to the government's evidence and violated his constitutional right to present a complete defense, *id*. at 2.

## II.  LEGAL STANDARD

A federal prisoner collaterally attacking the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). Under § 2255, a federal court may grant relief "if the sentence was imposed in violation of the Constitution or laws of the United States." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (citations omitted).

## III.  DISCUSSION

### A.  Procedural Default and Actual Innocence

First, the court addresses procedural default, which is dispositive of the bulk of defendant's claims.

/////

---

[3] In part, contending he "has not had an opportunity to study or decode the sentencing system for errors" defendant requested leave to amend this claim following appointment of counsel. *Id*. Following appointment of counsel, the claim has not been amended.

Generally, "claims not raised on direct appeal" are considered procedurally defaulted and "may not be raised on collateral review" unless "the [defendant] shows cause and prejudice" for the default. *Massaro v. United States*, 538 U.S. 500, 504 (2003) (*citing United States v. Frady*, 456 U.S. 152, 167–68 (1982); *Bousley v. United States*, 523 U.S. 614, 621–22 (1998)). Claims of ineffective assistance of counsel are an exception to this general rule and "may be brought in a collateral proceeding under § 2255, whether or not the [defendant] could have raised the claim on direct appeal." *Massaro*, 538 U.S. at 504. Similarly, claims of "actual innocence" may also be raised for the first time on collateral review. *See United States v. Avery*, 719 F.3d 1080 1083 (9th Cir. 2013) (citing *Schlup v. Delo,* 513 U.S. 298, 327 (1995)).

Claims that must be but were not raised on direct appeal may be raised on collateral review "only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' . . . or that he is 'actually innocent.'" *Bousley*, 523 U.S. at 622 (citations omitted).

> The "cause and prejudice" test for excusing the failure to raise a claim on direct appeal will apply, for example, where the claim rests upon a new legal or factual basis that was unavailable at the time of direct appeal, or where "interference by officials" may have prevented the claim from being brought earlier. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). If a petitioner succeeds in showing cause, the prejudice prong of the test requires demonstrating "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." [*Frady*, 456 U.S. at 170].

*United States v. Braswell*, 501 F.3d 1147, 1150 (2007) (emphasis omitted). The standard for relief from a procedural default on the ground of actual innocence is the same as the standard for assessing the merits of an actual innocence claim: "[t]o establish actual innocence, [a defendant] must . . . demonstrate in light of all the evidence, including new evidence that might be introduced by both sides, that 'it is more likely than not that no reasonable juror would have convicted him.'" *United States v. Ratigan*, 351 F.3d 957, 965 (9th Cir. 2003) (quoting *Bousley*, 523 U.S. at 623); *Alaimalo v. United States*, 645 F.3d 1042, 1047 (9th Cir. 2011).

Defendant raised three claims on direct appeal. First, he claimed the failure to provide him with a mirrored copy of the hard drives of the seized computers violated the Adam Walsh Act, 18 U.S.C. § 3509(m), as well as his rights under the Sixth Amendment and the Due Process

6

1  Clause to investigate evidence and prepare a defense.  *See generally* Statement.  Defendant's
2  second claim was that this court denied him a fair trial by failing to instruct the jury on his
3  defense theory, namely, third party culpability.  *Id*. at 3.  Finally, defendant claimed the
4  cumulative effect of the two claimed errors also required reversal of his conviction.  *Id*. at 38.
5  The Ninth Circuit rejected all three claims and affirmed defendant's conviction.  *See generally*
6  *Mitchell*, slip op.

7        The only claim raised in this matter also raised by defendant on direct appeal is his eighth
8  claim for relief here, an alleged denial of due process through denial of access to evidence.  The
9  remaining claims, other than claims of ineffective assistance of counsel and actual innocence, are
10 barred by the doctrine of procedural default unless defendant has established either cause for and
11 prejudice from the default, or actual innocence.  Defendant has not made any showing of cause
12 for his failure to raise the defaulted claims on direct appeal.  Nor has he presented evidence of
13 cognizable prejudice from the default, namely, that any of the alleged errors "worked to his *actual*
14 and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."
15 *Frady*, 456 U.S. at 170 (emphasis in original).

16       Nor has defendant made a showing of actual innocence.  As discussed below, the disputed
17 issues at trial centered on whether defendant or someone else downloaded child pornography onto
18 defendant's computers and whether defendant's computers had the capability of receiving remote
19 downloads.  Defendant has not pointed to, or suggested, any evidence that, if presented to a jury,
20 would make it more likely than not no reasonable jury would have convicted him.

21       For these reasons, all claims except defendant's eighth claim for relief and his claims of
22 ineffective assistance of counsel are barred by the doctrine of procedural default.

23       **B.**     **Eighth Claim**

24       Defendant's eighth claim is not procedurally defaulted to the extent it arises from the
25 application of the Adam Walsh Act, 18 U.S.C. § 3509(m), to defendant's pretrial access to the
26 computers seized from his residence by government agents.  It is, however, barred by the doctrine
27 of law of the case.
28 /////

There is a general bar to relitigating claims that were raised on direct appeal on a § 2255 motion unless there has been a change in the law since resolution of the appeal. *See Davis v. United States*, 417 U.S. 333, 342 (1974) (quoting *Sanders v. United States*, 373 U.S. 1, 17 (1963)). "This bar against relitigating issues in a § 2255 proceeding is an application of the law of the case doctrine." *United States v. Smith*, 2020 WL 5366303, slip op. at 7 (E.D. Cal. 2020) (citing *United States v. Jingles*, 702 F.3d 494, 498 (9th Cir. 2012)).

On direct appeal, defendant claimed the computer hard drives had not been reasonably available to him for forensic examination prior to trial. *See Mitchell,* slip op. at 2–3. The Ninth Circuit rejected this claim, noting defendant had had "practically unrestricted access to the computer hard drives at a government facility in Sacramento for nearly 20 months. . . ." *Id*. at 2. The Circuit also rejected defendant's "argument that he was not given meaningful access to the evidence because of budget and timing issues." *Id*. at 3.

In the reply, defendant contends he had three different forensic experts during the pretrial preparation period. Following the court's denial of a defense motion for a mirrored copy of the hard drives, defendant retained the expert who ultimately testified at trial; after his retention that expert had very limited access to the evidence. Reply at 5–6 (citing *United States v. Cronic*, 466 U.S. 648 (1984)). Specifically, defendant claims a complete breakdown in the adversarial process led to the presentation during trial of testimony from the late-retained expert, who had only one or two hours of access to the evidence. *Id*. at 6. Although he asserts that "[f]or whatever reason, the extent to which the defense was denied access to the critical forensic evidence in this case has not previously been exposed," *id*. at 5, he presents no evidence to support his position there was a cognizable breakdown in the adversarial process or to show prejudice. To the extent defendant's eighth claim for relief is not precluded by the law of the case doctrine, it is not supported by sufficient evidence to warrant relief.

**C.  Ineffective Assistance of Counsel**

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. To obtain relief on his claim of ineffective assistance of counsel, defendant must show that: (1) his "counsel's performance was deficient"; and (2) "the deficient performance prejudiced

[his] defense." *Strickland v. Washington*, 466 U.S. 668, 687–93 (1984); *see also Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam) (Sixth Amendment right denied when defense attorney's performance falls below objective standard of reasonableness and thereby prejudices defense) (citations omitted). Both prongs of the *Strickland* test must be satisfied in order to establish a constitutional violation. *Strickland*, 466 U.S. at 687, 697; *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) (failure to satisfy either prong of *Strickland* test obviates need to consider other).

The first prong of the *Strickland* test, deficient performance, requires a showing that counsel's performance fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner bears the heavy burden of demonstrating counsel's assistance was not reasonable or the result of sound strategy. *Murtishaw v. Woodford*, 255 F.3d 926, 940 (9th Cir. 2001); *see also Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007 (en banc) ("Because this case involves a claim of ineffective assistance of counsel, there is an additional layer of deference to the choices of trial counsel").

The second prong of the *Strickland* test, prejudice, requires a showing of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694–95. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id*.

Defendant makes thirty-two separate allegations of ineffective assistance of counsel, purportedly covering a wide range of counsel's performance. *See* Mot. at 12–13, 82–106.[4] The

---

[4] The allegations cover an exceptionally wide range including allegations that counsel (1) was "chronically unprepared"; (2) "refused to investigate" evidence related to a "framework for [his] defense" presented to counsel before he took the case; (3) was "unable to competently argue issues in court"; (4) "refused to challenge pretrial restrictions" imposed on defendant; (5) abandoned defendant's defense strategy without telling him; (6) failed to keep defendant informed; (7) failed to prepare defendant or other witnesses for trial; (8) failed to obtain or present alibi evidence; (9) refused to include defendant in the preparations for forensic examination; (10) failed to use a prosecution video to the advantage of the defense; (11) refused to impeach an unidentified prosecution witness; (12) failed to object to the government's recalling a witness after resting its case in what defendant describes as an "ambush at trial"; (13) took vacation for "weeks" rather than preparing for trial; (14) "failed to obtain a grand jury indictment or bill of particulars"; (15) "failed to obtain technical reports from government tests"; (16) "refused to present evidence" at trial of possible remote access to defendant's computers;

9

record of the trial discloses the evidence of child pornography found on defendant's computers was overwhelming and, as noted, the parties stipulated to the fact that child pornography had been downloaded onto defendant's computers. The primary dispute at trial was whether defendant or someone else had downloaded the material onto the computers; a secondary dispute was whether there was a "two-way" exchange on defendant's computers that would allow someone "at a quite remote site" to download material onto the computers. *See* RT (6/15/2016) at 181. Defendant presented evidence through a defense expert that such remote downloads were possible. As noted, defendant also blamed George Perry for the downloads. Both defendant and Perry testified at trial, and the jury had ample opportunity to hear and consider their testimony together with all of the other evidence.

To succeed on his claim of ineffective assistance of counsel, defendant would have to show that one or more of the acts or omissions of counsel he complains of fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. He would also have to show prejudice. He has done neither. In particular, he has shown neither that counsel's presentation of evidence on the facts in dispute was outside the bounds of professionally competent assistance, nor has he shown anything to suggest a reasonable probability the outcome of his trial would have been different absent the challenged acts or omissions of counsel.

For all of the foregoing reasons, defendant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 will be denied. Defendant has not made the substantial showing of the denial of a constitutional right; for that reason, this court will not issue a certificate of appealability under 28 U.S.C. § 2253.

/////

---

(17) refused to raise issues of prosecutorial misconduct at trial; (18) promised but failed to preserve issues for appeal; (19) failed to show at trial the government had lost, intentionally and willfully destroyed, and/or tampered with evidence; (20) failed to present evidence of government bad faith, witness tampering, or subornation of perjury to the jury; (21) failed to argue defendant had been denied meaningful access to evidence; and (22) refused to move for an evidentiary hearing. Mot. at 83–104. Most of the allegations are hyperbolic, pled without necessary specificity or both; some are either unsupported or even contradicted by the record.

## IV. CONCLUSION

The court **denies defendant's § 2255 motion (ECF No. 218) and the amendment thereto (ECF No. 219)**. Additionally, **all outstanding motions filed by defendant in pro per while represented by counsel (ECF Nos. 308, 309, 310, 317, 318, 319, 320, 321, 323, 324 and 325) were filed without leave of court and are therefore disregarded.** This court declines to issue a certificate of appealability under 28 U.S.C. § 2253.

The Clerk of the Court is directed to **close the companion case, No. 2:19-cv-1222 KJM**.

DATED: August 8, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE